### 18897. Roberts, executrix, v. Scott.

Hawkins, Justice. Plaintiff filed suit against defendant, seeking the cancellation of a certain deed purportedly executed by the deceased grantor by her mark to defendant a few days prior to her death. Since the sufficiency of the pleadings is not before us, they will not be repeated in detail here. The petition alleged in substance, however: that the

alleged grantor did not execute the deed, nor did she authorize anyone to execute the same in her behalf, and the same is a forgery. Plaintiff is the executrix of the estate of the deceased grantor, and in her individual capacity was named as the sole devisee and legatee under the will, Item 2 of which specifically devised and bequeathed to the named executrix individually, with a detailed description thereof, the same property which is described in the alleged deed. At the conclusion of the evidence for plaintiff, defendant moved for a nonsuit, but before the court had announced any ruling thereon, plaintiff tendered an amended petition containing a second count, and moved that it be allowed and ordered filed, which motion was denied. Thereupon the court sustained the motion for a nonsuit and judgment was entered accordingly. Plaintiff filed her motion to set aside and vacate the judgment of nonsuit and to reinstate the case, which was overruled on January 3, 1955, and the exception to be dealt with here is to this judgment. *Held:*

1. "Where a nonsuit has been granted, the losing party may either bring his case to the Supreme Court by writ of error, or may, during the term of the trial, move to reinstate the case, and from a refusal of that motion, properly made, may bring the case to this court." *Aiken v. Peck & Allen*, 72 *Ga.* 434 (1).

2. "It has frequently been held by this court that where a plaintiff offers to the court an amendment to be allowed and filed as a part of the record, and the court refuses to allow it, the paper does not become a part of the record by merely filing it in spite of the disallowance; and if exception is taken to such refusal to allow it, the proposed amendment should be brought up in the bill of exceptions, or attached thereto as an exhibit properly identified, and can not be brought up by specifying it as a part of the record, of which it never legitimately became a part." *Holmes v. Cobb Real Estate Co.*, 142 *Ga.* 56 (1) (82 S. E. 496). The "amended petition containing a second count," tendered but not allowed filed, not reaching this court in the prescribed manner, the exception to the order disallowing it can not be considered. *Douglass v. Williams Art Co.*, 143 *Ga.* 846, 848 (85 S. E. 993). And see, in this connection, *Pettitt v. Mayor &c. of Macon*, 95 *Ga.* 645 (1) (23 S. E. 198).

3. The order of the trial court denying the motion to reinstate the case recites in part: "(a) plaintiff, in open court, assumed the burden of proof to establish and prove that the deed in question was a forged deed; and (b) plaintiff, in open court, agreed and stated that the sole issue in the case was whether or not the deed sought to be cancelled was a forgery; and, under the evidence submitted by plaintiff, it is the opinion of this court that plaintiff did not establish a prima facie case, and having failed to make out a prima facie case, he could not, by amendment set out a new issue, having agreed to confine the case to the issue solely of forgery." Thus, it is evident that the correctness of the judgment depends on the evidence introduced upon the hearing and considered by the trial judge. The bill of exceptions does not contain or exhibit any evidence, or specify anything as a brief of evidence, but there is a recitation therein that "The plaintiff in error in regular course and within the time prescribed by law filed the brief of

the evidence, . . . properly certified, and approved by the court." Under the circumstances, since the omitted record is necessary to a proper adjudication of the case, this court of its own motion has caused a certified copy of it to be transmitted to the Clerk of the Supreme Court. *Thompson* v. *Simmons & Co.*, 139 *Ga.* 845 (1) (78 S. E. 419). See also *Northwest Atlanta Bank* v. *Zec*, 196 *Ga.* 114 (1) (26 S. E. 2d 183).

(a) The brief of evidence, approved by the trial judge on December 30, 1954, now before this court, reveals: Whittie Lovett testified that she visited Ophelia Williams, the deceased testator and alleged grantor, December 27, 1953, and on this day Ophelia told Whittie "I ain't gonna change the will of my place, that's willed to Georgia," and she further testified that "I had an occasion to visit in the home of Ophelia after the date that . . . this alleged deed bears, which is December 29, 1953, . . . and she said she wasn't gonna change her will, it had to go to her niece to help take care of her sister, she said she wasn't gonna change it for nobody." Lula Johnson testified: "I had an occasion to be in the home of Ophelia Williams during her last illness. . . As to whether I ever heard her say whether she wanted Georgia to have her property or who, she wanted Georgia to have it. I heard her make that statement." This witness further testified in substance: that she was placed in the home of Ophelia Williams to care for her by the father of the grantee in the purported deed; that she remained there from December 27, 1953, to the time of Ophelia's death on January 8, 1954; that she was there on December 29, 1953, the date on which the deed purports to have been executed, and that the grantee was not in the home on that date; that no deed was presented to Ophelia for execution by her by either the grantee or his father on that day, and that neither of the witnesses whose names appear on the deed was ever present in the home of Ophelia; that she knew Morell Ponder, and if he and Julius M. Ponder, one of the attesting witnesses to the deed, were one and the same person, he never was in the house; that while Morell Ponder did come to the house in an automobile with one Otto Scott, the father of the grantee, he never came in the house but remained outside in an automobile, and that Otto Scott did not bring any deed into the house to be executed by Ophelia on that occasion; that Ophelia did not sign any deed or authorize anyone else to sign any deed for her during the entire time that the witness remained in the home; that she was present in the home during all of the time from December 27, 1953, to January 8, 1954, except for a few short trips to town and back; and that in her opinion no such deed could have been executed by Ophelia during her absence.

(b) The evidence for the plaintiff summarized above, together with other circumstantial evidence and all reasonable deductions therefrom, was sufficient to carry the case to the jury, and the trial judge erred in granting a nonsuit. Code § 110-310; *Harris* v. *Underwood*, 208 *Ga.* 247, 250 (5) (66 S. E. 2d 332); *Wright* v. *Roseman*, 209 *Ga.* 176 (5) (71 S. E. 2d 426).

*Judgment reversed. All the Justices concur.*

Argued March 14, 1955—Decided April 11, 1955.

*L. H. Hilton, Hilton & Hilton,* for plaintiffs in error.
*Hollingsworth & Hollingsworth, Harold Hollingsworth,* contra.