## A02A0087. KOHL v. TIRADO.
(569 SE2d 576)

BARNES, Judge.

John Scott Kohl sued podiatrist Lissette Tirado, asserting that Dr. Tirado committed malpractice in failing to diagnose a fractured ankle and provide appropriate treatment. A jury awarded Kohl $9,000 in damages, and he appeals, contending the trial court erred (1) in denying his motion for new trial on damages, (2) in admitting Dr. Tirado's records into evidence, and (3) in overruling his objection to expert witness testimony that was based on opinion rather than fact. Finding no error, we affirm.

Kohl injured his ankle on September 7, 1996, while water-skiing on vacation in Tennessee. Two days later, when he returned to Atlanta, he saw Dr. Tirado, who x-rayed his ankle and diagnosed a sprain. She recommended that Kohl refrain from weight-bearing, wear a compression cast to decrease swelling, and return in two weeks. On September 17, 1996, he returned to Dr. Tirado, who noted that Kohl could move his ankle better, and that it was not swollen, had purple bruising, and was significantly less tender. He had begun bearing partial weight on the injured ankle, and Dr. Tirado noted he was progressing well. On October 2, 1996, Kohl returned for a third visit and reported that he had returned to some of his regular activities and was experiencing mild foot discomfort primarily when standing a long time or running.

On November 12, 1996, Kohl presented to Dr. Tirado with increased pain and tenderness that began two weeks earlier while climbing a ladder. Because these pain symptoms were new, Dr. Tirado referred Kohl for a CT scan, which she testified revealed a fracture but no evidence the bone had begun healing. The initial x-ray was not available at trial; an imaging center employee testified it had been returned to Dr. Tirado's office, and Dr. Tirado testified that she was only in the office where the courier said he delivered the x-ray one day a week, and that office had been closed the day of delivery.

On November 21, 1996, an orthopedic surgeon operated on Kohl's ankle, and he testified that the fracture had healed improperly and could not be repaired correctly. Kohl underwent a second surgical procedure in December 1998, which he said helped only temporarily. Kohl testified that he had significantly reduced his former high level of physical activity due to pain and limitations in his ankle joint. He introduced medical bills covering his expenses from September 9, 1996, when he first saw Dr. Tirado for his ankle, to the present, totaling $21,132.49. An expert orthopedic surgeon testified that, based on his review of the CT scan and the operating surgeon's testimony that the break had healed improperly, it was his opinion that the injury did not occur in November 1996, but was consistent with having occurred in September 1996. When asked if Dr. Tirado should have diagnosed the fracture on September 9, 1996, the expert responded that the diagnosis should have been made "prior to the time that it was ultimately made." He also testified that he thought the failure of the standard of care related to "the length of time from the injury to the diagnosis, as opposed to the specific treatment that was rendered on that initial visit."

1. Kohl contends the trial court abused its discretion in denying his motion for a new trial on the issue of damages, arguing that the jury's $9,000 lump sum award is inadequate because it does not even equal his medical bills. "The question of damages is ordinarily one for the jury; and the court should not interfere with the jury's verdict unless the damages awarded by the jury are clearly so inadequate or so excessive as to be inconsistent with the preponderance of evidence in the case." OCGA § 51-12-12 (a). "[T]he focus of OCGA § 51-12-12, under which the award is being reviewed, is to allow the *trial court* to interfere with a jury verdict in two opposite situations — where the award is so inadequate or so excessive as to be contrary to the preponderance of the evidence." *Moody v. Dykes*, 269 Ga. 217, 221 (6) (496 SE2d 907) (1998). "[A]n excessive or inadequate verdict is a mistake of fact rather than of law and addresses itself to the discretion of the trial judge who, like the jury, saw the witnesses and heard the testimony." Id. at 221-222.

> The general rule on appeal of an award of damages is that a jury's award cannot be successfully attacked so as to warrant a new trial unless it is so flagrantly excessive or inadequate, in light of the evidence, as to create a clear implication of bias, prejudice, or gross mistake on the part of the jurors. Even though the evidence is such as to authorize a greater or lesser award than that actually made, the appel-

late court will not disturb it unless it is so flagrant as to shock the conscience.

(Punctuation omitted.) *Wallace v. Stringer*, 250 Ga. App. 850, 855 (2) (553 SE2d 166) (2001).

In this case, Kohl's own expert testified that only the failure to diagnose the fracture earlier violated the standard of care, but declined to specify a date when he thought that violation occurred. The expert also testified that the treatment recommended for a sprain "could also work for a break or a fracture." Further, Kohl would have incurred some of those medical expenses for treatment of his injured ankle regardless of any malpractice. A verdict for less than the amount of the plaintiff's proved medical expenses is not so inadequate as to require a new trial where testimony showed that some portion of the plaintiff's medical expenses was at least partially related to his initial injury, and not just to any injury caused by Tirado's negligence. See *Turpin v. Worley*, 206 Ga. App. 341, 342 (1) (425 SE2d 895) (1992). Further, the trial court's approval of the verdict creates a presumption of correctness that will not be disturbed absent compelling evidence. *Brown v. Southern Aggregate Co.*, 207 Ga. App. 886, 888 (1) (429 SE2d 294) (1993). The trial court did not err in denying Kohl's motion for new trial on the issue of damages.

2. Kohl contends that the trial court erred in admitting his medical records into evidence, arguing here, as he did at trial, that (a) the records contained hearsay; (b) they did not meet the business records exception because they were "full of opinion"; and (c) they were self-serving memoranda. When Dr. Tirado first began discussing her office notes, Kohl made the three objections noted above. The trial court reserved ruling on the hearsay objection and denied the other two grounds. Following Dr. Tirado's testimony, she tendered the records, which were admitted without objection.

(a) "[W]e are limited on appeal to those grounds presented to and ruled upon by the trial court and then enumerated as error." (Punctuation omitted.) *Dietz v. Becker*, 209 Ga. App. 678, 679 (3) (434 SE2d 103) (1993). Here, the trial court reserved ruling on the hearsay objection and then admitted the records without objection; thus, we will not consider this ground. The trial court did, however, deny Kohl's objection to the records on the basis that they contained inadmissible opinions and were self-serving memoranda.

(b) Kohl argues that the medical records were inadmissible because they contained opinion evidence and thus were not subject to the business records exception to the hearsay rule. A medical record containing diagnostic opinions and conclusions may be admitted into evidence if "the proper foundation is laid, i.e., the person who entered such diagnostic opinions and conclusions upon the record must qual-

ify as an expert and relate the facts upon which the entry was based." *Cassano v. Pilgreen's, Inc.*, 117 Ga. App. 260, 261 (2) (160 SE2d 439) (1968). Dr. Tirado testified regarding the facts upon which she relied in reaching her opinions about Kohl's ankle injury and was available for cross-examination. Further, with proper notice,

> [u]pon the trial of any civil case involving injury or disease, any medical report in narrative form which has been signed and dated by an examining or treating licensed . . . podiatrist . . . shall be admissible and received in evidence insofar as it purports to represent the history, examination, diagnosis, treatment, prognosis, or interpretation of tests or examinations, including the basis therefor, by the person signing the report, the same as if that person were present at trial and testifying as a witness.

OCGA § 24-3-18 (a). Kohl does not contend he did not receive notice that these records were going to be used at trial, and he cross-examined Dr. Tirado thoroughly regarding her opinions and diagnoses. The trial court did not err in denying Kohl's objection to Dr. Tirado's tender of Kohl's medical records because they contained the podiatrist's opinions.

(c) Kohl objected to the admission on the ground that his medical records constituted "self-serving memoranda." Examples of self-serving memoranda that have been deemed inadmissible hearsay include notes made by the defendant's agent before preparing an application for insurance coverage (*Nationwide &c. Ins. Co. v. Rhee*, 160 Ga. App. 468, 472 (10) (287 SE2d 257) (1981)); a note regarding a phone call related to the terms of a disputed contract (*Maryfield Plantation v. Harris Gin Co.*, 116 Ga. App. 744, 747 (4) (159 SE2d 125) (1967)); and a written statement, not furnished to the other party, that a contract had been performed within a year of suit being filed on a materialman's lien (*Young v. Landers*, 31 Ga. App. 59 (119 SE 464) (1923)). Those cases are unlike the case before us, in which a patient sued his treating podiatrist for malpractice, and the disputed evidence consists of the patient's medical records. As the statute allowing the business records exception to the hearsay rule provides, the "circumstances of the making of the writing or record . . . may be shown to affect its weight; but they shall not affect its admissibility." OCGA § 24-3-14 (c).

"Admission of evidence is committed to the sound discretion of the trial court, whose determination shall not be disturbed on appeal unless it amounts to an abuse of discretion." (Citation and punctuation omitted.) *Chambers v. Gwinnett Community Hosp.*, 253 Ga. App. 25, 26 (1) (557 SE2d 412) (2001). We find no abuse of discretion here.

(d) Finally, Kohl failed to object to the records on the ground that they violated the "continuing witness" rule, and we will not consider that issue for the first time on appeal. *Dietz v. Becker*, supra, 209 Ga. App. at 679.

3. Kohl asserts that the trial court erred in allowing an expert witness to give an opinion that was based on opinion rather than facts. The testimony to which he objects follows a hypothetical question posed to Dr. Tirado's expert witness, asking him to assume among other things that Dr. Tirado read Kohl's x-rays and did not find any fracture. The trial court overruled Kohl's objection, and the expert testified that Dr. Tirado's subsequent actions complied with the standard of care. On cross-examination, the expert admitted that if the hypothetical were changed and Kohl's x-ray had shown a fracture that the podiatrist did not see, then his opinion would be "destroyed."

"The opinions of experts, on any question of science, skill, trade, or like questions, shall always be admissible; and such opinions may be given on the facts as proved by other witnesses. The proper mode of examining an expert, where he is not testifying from his own knowledge, is to ask him hypothetical questions. [Cit.]" *Parrish v. State*, 237 Ga. App. 274, 278 (2) (iii) & (iv) (514 SE2d 458) (1999). The issue of whether Kohl's ankle was fractured or not when he first began treatment with Dr. Tirado constitutes the main factual dispute in this case. The expert testified that, assuming the ankle was not fractured initially, Dr. Tirado's treatment fell within the accepted standard of care, and further testified on cross-examination that if the ankle were fractured initially, the x-rays revealed the fracture, and Dr. Tirado missed it, then her treatment fell outside the accepted standard of care. " 'After an expert testifies as to [her] opinion, [she] may be examined as to the factors which [she] considered in formulating that opinion. We find no error here.' Likewise, this court finds no error here." *Woodruff v. Naik*, 181 Ga. App. 70, 71 (5) (351 SE2d 233) (1986).

*Judgment affirmed. Pope, P. J., and Ruffin, J., concur.*

DECIDED JULY 12, 2002 —
RECONSIDERATION DENIED JULY 25, 2002

*England & England, J. Melvin England*, for appellant.
*Drew, Eckl & Farnham, James M. Poe, Barbara A. Marschalk*, for appellee.