A03A0512, A03A0525. MULTIMEDIA TECHNOLOGIES, INC.
et al. v. WILDING; and vice versa.

(586 SE2d 74)

MILLER, Judge.

Following a jury trial, all parties appeal in these cases consolidated for review on appeal. In Case No. A03A0512, Multimedia Technologies, Inc. and Taz Anderson, Jr. appeal from the trial court's denial of a motion for new trial and a motion for judgment notwithstanding the verdict. In Case No. A03A0525, Julie Wilding[1] challenges the adequacy of the jury's award and challenges the sufficiency of the evidence on several of the jury's findings.

The evidence showed that Beverly Sigmond Parks approached Taz Anderson, Jr. in 1991 about using Anderson's contacts to obtain a permit to enlarge a sign for advertising atop the MONY building in Atlanta. The two formed a corporation, Signage Technology, Inc. (STI), with Parks owning 50 percent and Anderson's family owning 50 percent. Parks and Anderson also entered into an agreement, which provided that Anderson was to pay the expenses of securing the sign permit and would be repaid from the first rental payment of the completed sign. In 1992, STI entered into a lease agreement with Jalex Investment & Development Corporation for office space and rooftop space in the MONY building. STI was to pay $1,000 per month for rent beginning in September 1992.

Anderson claimed that over the course of several months, he had a difficult time getting in touch with Parks to discuss matters relating to STI, and that he sent Parks letters requesting Parks's half of the lease payment each month but that Parks never paid. In January 1993, Anderson obtained the necessary permits for erecting the signs. STI made the $1,000 lease payment to Jalex for January but

---

[1] The counterclaim was originally filed by Beverly Sigmond Parks who died during the pendency of this action. Julie Wilding, the administrator of Parks's estate, was substituted as a party. For ease of reference, Parks's name will be substituted for Wilding's throughout this opinion.

did not make the February payment and was notified by Jalex that it was in default. Jalex terminated the lease one month later. Anderson admitted that he only paid his portion of the lease payment for the month of February because Parks failed to submit his half of the payment, and that he took no further steps to prevent the STI lease from going into default. Anderson contended that all money put into STI came from him as a loan, and that Parks contributed nothing to the business. Anderson claimed that he had invested $100,000 of his own money into STI.

After the STI lease was terminated, Multimedia Technologies, a company formed in February 1993 and controlled by Anderson, entered into lease agreements with Jalex for office space and rooftop space in the MONY building. Anderson marketed the Peachtree Spectacular sign atop the MONY building in the name of Multimedia, and went on to enter into other advertising contracts for the MONY rooftop and north wall. Multimedia also contracted to construct a sign atop the IBEW building in Atlanta.

After the business relationship soured, Anderson sued Parks for slander and tortious interference with contractual relations between Multimedia and the Atlanta Electrical Workers Home Association (housed in the IBEW building). Parks counterclaimed for, among other things, breach of fiduciary duty, breach of the STI shareholders' agreement, conversion, misappropriation of corporate assets and opportunities, and tortious interference with contractual relations.

The jury found in favor of Parks on (1) Multimedia's claim of tortious interference with contractual relations, (2) Parks's claim that Anderson and Multimedia converted the corporate assets of STI, (3) Parks's claim that Anderson breached the shareholders' agreement, and (4) Parks's claim that Anderson breached his fiduciary duties. The jury found in favor of Multimedia on Parks's claim of tortious interference with contractual relations. The jury also found in favor of Anderson on (1) Anderson's claim for slander, (2) Parks's claim for misappropriation of corporate assets and corporate opportunities, and (3) Parks's claim against Anderson for fraud. The jury awarded Parks a total of $500,000 but did not award him punitive damages or attorney fees.

Anderson and Multimedia appeal from the trial court's denial of a motion for new trial and a motion for j.n.o.v. Parks appeals, contending that the jury award was inadequate and that the evidence did not support a finding for Anderson on Parks's claims for misappropriation of corporate assets and corporate opportunities, and expenses of litigation.

*Case No. A03A0512*

1. The jury returned a verdict in favor of Anderson on Anderson's slander claim against Parks, but awarded zero damages. Anderson contends that the court erred in denying the motion for new trial on the ground that such award is inadequate and improper as a matter of law. However, a verdict in favor of Anderson but awarding zero damages is, in legal effect, a verdict for Parks. See *Moore v. TCI Cablevision of Ga.*, 235 Ga. App. 796, 798 (1) (510 SE2d 96) (1998); *Gielow v. Strickland*, 185 Ga. App. 85, 87 (4) (363 SE2d 278) (1987). Thus, Anderson's argument that the award was inadequate is without merit as he would not be entitled to damages for such a verdict.

2. The jury awarded Parks $375,000 for Anderson's breach of the shareholders' agreement, breach of fiduciary duty, and conversion of the assets of STI. The jury also awarded Parks $125,000 for Multimedia's conversion of the assets of STI. Anderson contends that the trial court erred in denying his motion for j.n.o.v. on Parks's claims of breach of fiduciary duty and breach of the shareholders' agreement. Both Anderson and Multimedia enumerate as error the denial of their motion for j.n.o.v. on Parks's claim for conversion of STI's assets.

A trial court can grant a j.n.o.v. only where there is no conflict in the evidence as to a material issue, and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict. *Ballenger Paving Co. v. Gaines*, 231 Ga. App. 565, 566 (1) (499 SE2d 722) (1998).

(a) Anderson and Multimedia contend that the trial court erred in denying the motion for j.n.o.v. on Parks's claim for conversion of assets. They argue that Parks failed to introduce evidence of the value of the assets transferred and failed to rebut the evidence that the assets were transferred in exchange for a debt due Anderson.

"Conversion involves the unauthorized assumption and exercise of right of ownership over personalty of another, contrary to the owner's rights. Any act of dominion wrongfully asserted over another's personal property which is in denial of his property rights, or inconsistent with them, is a conversion." (Citations and punctuation omitted.) *Pelletier v. Schultz*, 157 Ga. App. 64, 65-66 (3) (a) (276 SE2d 118) (1981). Anderson himself testified that he transferred $22,774 of STI funds to Multimedia in 1993. Although Anderson claims that he transferred the money in exchange for debt owed to him by STI, he presented no evidence showing that he was to be repaid in such a manner. Moreover, Anderson could not unilaterally transfer the funds belonging to STI to Multimedia as Parks was a 50 percent shareholder of STI and had an interest in its assets. Thus, there was evidence that at a minimum, Anderson and Multimedia converted $22,774 belonging to STI. Moreover, it was for the jury to

determine how much was converted. See *Epps v. Epps*, 141 Ga. App. 659, 662 (3) (234 SE2d 140) (1977). Therefore, the trial court did not err in denying the motion for j.n.o.v. on this ground.

(b) Anderson argues that Parks failed to prove damages resulting from any breach of the shareholders' agreement and failed to introduce evidence separately proving damages arising out of his breach of fiduciary duty claim.

The evidence showed that Anderson, while having a fiduciary duty as director and officer of STI, not only transferred funds belonging to STI to Multimedia, but allowed the lease on the MONY building to go into default. The evidence also showed that Anderson pursued advertisement for the signs under Multimedia and under the name of another company owned by Anderson and his wife. An expert testified that had STI pursued the development, Parks and Anderson would have shared a profit of more than $3 million over nine years. A second expert testified that the signs developed for the MONY building were worth $700,000.

Under the shareholders' agreement, Anderson was required to obtain Parks's written consent prior to transferring any of Anderson's interest in STI, and both Anderson and Parks were to jointly make all decisions regarding the management and operation of STI. Due to Anderson's actions in failing to comply with these requirements (including unilaterally making decisions that affected the operations of STI), Parks suffered some amount of damages. The evidence showed that if STI had maintained the leases and therefore been able to pursue the development of the MONY building signs, Parks would have profited.

As there was some evidence presented of damages stemming from Anderson's breach of both the shareholders' agreement and his fiduciary duty, the trial court did not err in denying Anderson's motion for j.n.o.v. on this ground. And we see no authority requiring that damages be proven separately for each claim.

3. Anderson argues that the court also erred in denying his motion for j.n.o.v. on the ground that Parks failed to elect between contractual and tort remedies. "Although the election of remedies should occur before judgment is rendered, there is no reversible error in failing to require the plaintiff to do so where there is no risk of double recovery." (Citation omitted.) *Efstathiou v. Reiss*, 227 Ga. App. 735, 739 (10) (490 SE2d 426) (1997). "This provision of the Code was uniformly held to bar the pursuit of two inconsistent remedies. Two remedies were inconsistent if the assertion of one involved the negation or repudiation of the other." (Citations and punctuation omitted.) *UIV Corp. v. Oswald*, 139 Ga. App. 697 (229 SE2d 512) (1976). That is not the case here. Evidence supported the jury's finding that Anderson converted the assets of STI, made numerous business deci-

sions without conferring with Parks in violation of the shareholders' agreement, including allowing the leases to go into default, and breached his fiduciary duty to STI by pursuing the same development under Multimedia. Thus, Parks was entitled to recover on each of those causes of action as there was no risk of double recovery. The court did not err in denying the motion for j.n.o.v. on this ground.

4. Multimedia and Anderson filed a motion in limine (and a renewed motion in limine) to exclude any testimony regarding an oral agreement stating that Anderson would fund the development of a sign on the MONY building. The trial court denied the motion. Appellants objected to testimony at trial making reference to such statements and objected to the admission of a letter making such reference. On appeal they argue that the trial court's grant of summary judgment holding that the contract was the only enforceable agreement between the parties is the law of the case, and therefore no evidence of an oral agreement can be introduced. However, Parks was not attempting to enforce an oral agreement but simply testified as to his understanding of Anderson's obligation to STI. Therefore, this enumeration is without merit.

## Case No. A03A0525

5. In two enumerations, Parks argues that the jury's award was grossly inadequate in relation to the damages proved at trial. "The question of damages is ordinarily one for the jury; and the court should not interfere with the jury's verdict unless the damages awarded by the jury are clearly so inadequate or so excessive as to be inconsistent with the preponderance of the evidence in the case." OCGA § 51-12-12 (a). "Even though the evidence is such as to authorize a greater or lesser award than that actually made, the appellate court will not disturb it unless it is so flagrant as to shock the conscience." (Citation omitted.) *Kohl v. Tirado*, 256 Ga. App. 681, 682-683 (1) (569 SE2d 576) (2002).

The jury awarded Parks $500,000 in damages. Anderson testified that he had estimated that he and Parks would have made a profit of $160,000 in 2003. One expert testified that the MONY signs were worth $700,000, and a second expert stated that Parks and Anderson would have shared more than $3 million in profit over nine years. Anderson himself stated that at the time of trial, the signs had generated a profit of $1.2 million. The jury could have concluded that had STI pursued development of the signs, Parks would have been entitled to half of that profit. Thus, there was sufficient evidence for the jury to determine the amount of damages due Parks. Cf. *Gaines v. Crompton & Knowles Corp.*, 190 Ga. App. 863, 864 (1) (A) (380 SE2d

498) (1989). Here, the award was not so inadequate as to shock the conscience. See *Kohl*, supra, 256 Ga. App. at 683 (1).

6. Parks argues that the evidence was not sufficient to support a verdict in favor of Anderson on Parks's claims for misappropriation of corporate opportunities, and expenses of litigation.

> [A] jury verdict returned in favor of the defendant in a tort case . . . represents a finding by the jury that the plaintiff did not meet his burden of proof as to the defendant's liability for damages. As against this negative finding by the jury against the plaintiff, an appellate court would not be authorized to hold that a contrary positive verdict in favor of the plaintiff was demanded unless a review of the record demonstrated that, as a matter of law, the plaintiff had met his initial burden of proof as to the defendant's liability and that the defendant had then failed to produce any evidence as to his non-liability.

(Citations and emphasis omitted.) *Denny v. D. J. D., Inc.*, 188 Ga. App. 431, 432 (1) (373 SE2d 383) (1988).

(a) Parks argues that the evidence demanded a verdict in his favor on his claim for misappropriation of corporate opportunities. However, such a claim requires a showing that the corporation was financially able to undertake the opportunity. See *Quinn v. Cardiovascular Physicians, P.C.*, 254 Ga. 216, 218 (3) (326 SE2d 460) (1985). Examining the evidence in the light most favorable to the verdict, Anderson testified that STI was financially unable to continue operating without funds from the shareholders and that he had no obligation to loan money to STI. And the evidence showed that the construction and maintenance cost of the signs was approximately $1.2 million. Thus, as there was some evidence that STI could not finance on its own (without loans from Anderson) the business opportunity taken by Anderson, we will not disturb the jury's verdict. Cf. *Mays v. Farah U.S.A.*, 236 Ga. App. 1, 3 (3) (510 SE2d 868) (1999).

(b) Parks argues that because Anderson acted in bad faith in breaching his fiduciary duty and in converting the assets of STI, he should be awarded attorney fees. He contends that inherent in conversion is bad faith, and since the jury found in his favor on this claim, he is entitled to attorney fees. OCGA § 13-6-11 provides that a jury *may allow* the expenses of litigation where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense. Parks is correct that "every intentional tort invokes a species of bad faith and entitles a person so wronged to recover the expenses of litigation including attorney fees." (Citations and punctuation omitted.) *Hudspeth v.*

*A & H Constr.*, 230 Ga. App. 70, 72 (3) (a) (495 SE2d 322) (1997). However, "bad faith is a question for the [trier of fact] to be determined from consideration of the facts and circumstances in the case." (Citations and punctuation omitted.) Id.

The evidence showed that Parks failed to participate in the operations of STI and was not responsive to Anderson's communications concerning the company's status. Out of frustration and a desire to pursue the sign advertisement contracts, Anderson continued STI's business pursuits under Multimedia. Anderson believed that Parks was to pay half of the lease payment and each month sent Parks a letter informing him of when the payment was due. Anderson also testified that he transferred funds belonging to STI to Multimedia to reimburse himself for loans he made to STI and to recoup the cost of pursuing the development of the signs. Thus, the evidence does not *demand* a finding of bad faith on the part of Anderson.

*Judgments affirmed. Smith, C. J., and Ruffin, P. J., concur.*

DECIDED JULY 15, 2003 —
RECONSIDERATION DENIED JULY 30, 2003 — 

*Schreeder, Wheeler & Flint, David H. Flint, Mark W. Forsling*, for appellants.

*Adam R. Gaslowitz & Associates, Adam R. Gaslowitz, Walter Hamberg III, Brian M. Deutsch, Thomas W. Dworschak*, for appellee.